UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIRO SOTO,<br><br>    Petitioner,<br><br>    v.<br><br>MARTIN BITER,<br><br>    Respondent. | No. 2:12-cv-2372-KJM-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his convictions for murder and attempted murder with gang and firearm enhancements, and consequent life without parole sentence, entered by the San Joaquin County Superior Court. ECF No. 1 at 1. The challenge is simple – petitioner contends that investigating authorities obtained incriminating statements from him via methods offensive to the federal Constitution. For the reasons that follow, the petition must be denied.

**I.  Background**

The facts, as relayed by the California Court of Appeal[1], are:

> Defendants Soto and Torres, and Torres's brother Daniel, drove through Stockton with a .22-caliber rifle and fired three separate shots at two groups of young men

---

[1] The facts recited by the state appellate court are presumed to be correct where, as here, the petitioner has not rebutted the facts with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Slovik v. Yates*, 556 F.3d 747, 749 n.1 (9th Cir. 2009) (as amended).

1

they believed to be Norteño gang members. . . .. Soto was 19 years old at the time of the shootings and a member of a Sureño gang from Los Angeles called the "Cyclone Buddies." . . ..

*South Sierra Nevada Street Shooting (Counts 8 through 10)*

In March 2007, Soto, [and co-defendants] Torres and Daniel drove past Donasiano Ortega's house on South Sierra Nevada Street [in Stockton] in . . . [a] green Pathfinder . . .. Torres drove, while Soto occupied the front passenger seat, and Daniel sat in the back.

Ortega was on the driveway in front of his house talking to his friend Neto when the Pathfinder approached from the north. As the vehicle passed Ortega and Neto, Soto leaned out of the passenger window pointing a rifle and fired one shot at the men. Fortunately, no one was hit by the bullet. Both Ortega and Neto had long hair at the time of the shooting, which was consistent with the hair style worn by Norteños, and Ortega confirmed that Neto was a Norteño.

\*\*\*

*South Airport Way Shootings (Counts 1 through 4, 6 and 7)*

After the shooting on South Sierra Nevada Street, the threesome continued on their search for Norteños. As the Pathfinder approached the Highway 4 overpass on South Airport Way, they came across Pablo Hernandez and Pablo Ibarra. Hernandez was wearing a red belt, had a red bandana hanging from his back pocket, and associated with Norteño gang members. Ibarra was not wearing any red clothing, but was once a member of a Norteño gang called the "Loc'd Out Ene's" and had Norteño related tattoos.

Hernandez and Ibarra were walking north on South Airport Way, on the left side of the street, when the Pathfinder approached them from the north. The vehicle stopped just past the men, and one of the occupants yelled, "Let's get these." Daniel, the rear passenger, then passed the rifle to Soto in the front passenger's seat, and Soto fired a shot at Hernandez and Ibarra. Soto missed. When the shot was fired, Ibarra was standing closest to the street; Hernandez was standing to the left of Ibarra and slightly ahead of him, just out of arm's reach.

The Pathfinder drove off, continuing south, and made the first available right turn. Hernandez and Ibarra continued walking north. When they reached the intersection of South Airport Way and East Washington Street, just past the Highway 4 overpass, Hernandez and Ibarra again saw the Pathfinder. The vehicle again approached from the north, but this time made a right turn onto East Washington Street and pulled over so that the driver's side window was facing Hernandez and Ibarra's position on the southwest corner of the intersection. Torres fired the rifle from the driver's side window and then drove off. When this shot was fired, Hernandez was to the left and roughly five feet ahead of Ibarra. The bullet pierced Hernandez's left lung and heart, grazing the right lung. Hernandez and Ibarra were able to continue through the intersection before Hernandez collapsed on the other side of the street. Hernandez died a short time later.

\*\*\*

/////

At 10:45 p.m., two days after the shootings on South Sierra Nevada Street and South Airport Way, Soto was arrested and taken to the police station for questioning. The interview began at roughly 1:00 a.m. the following morning. Because Soto was not proficient in the English language, the interview was conducted in Spanish, and was largely a one-on-one conversation with Detective Eduardo Rodriguez.

After being advised of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436, Soto acknowledged that he was a member of a Sureño gang from Los Angeles called the "Cyclone Buddies" or "SGB." Detective Rodriguez then advised Soto: "I don't want to start with lies. I'm Mexican. I want to help you. I don't want to screw you. Okay. But . . . you need to tell the truth." Soto then admitted to being in the vehicle with Torres and Daniel during the shootings, but repeatedly denied firing any of the shots, claiming instead that he was seated in the back, that he simply wanted a ride home, and that Torres fired all three shots. Several times during nearly three hours of questioning, Detective Rodriguez told Soto that he was going to "get screwed" if he lied about what happened. When questioning ceased at 3:46 a.m., Soto was given a Coke and left alone in the interview room.

Although Soto was not provided a blanket or pillow, he managed to sleep for several hours on two chairs he put together to create a makeshift bed. At 9:05 a.m., Soto was taken to a different interview room. At 2:15 p.m., detectives provided Soto with food. At 2:58 p.m., questioning resumed.

Detective Rodriguez began by reminding Soto that the "most important thing of all" was to "tell the truth." He then told Soto that he had talked to several witnesses, and said: "So, I'm going to give you another chance. Because, what did I tell you? You're, you're just going to screw yourself if you tell me one lie." The detective continued: "I don't know what happened last night, but we started off with lies. Okay? But this is another chance. Okay. But this is another chance. When I talked to your mom, I promised her that I was going to give you another chance." Soto then admitted to having fired one shot in the direction of Ortega and Neto on South Sierra Nevada Street. As Soto explained, he was in the front passenger seat, Torres was driving, and Daniel passed Soto the rifle from his position in the back. Soto also admitted to having fired the first shot on South Airport Way, but denied aiming at either Hernandez or Ibarra. According to Soto, he "wasn't firing to hit them, just like to frighten them." Soto also explained that Torres fired the final shot that killed Hernandez, and then they "left really fast."

The trial court denied Soto's pretrial motion to suppress the confession. The trial court found that Soto was "properly advised pursuant to Miranda prior to any questioning," and that, under the totality of the circumstances, the practices and procedures used by detectives did not amount to "coercive activity."

As the court explained, while the interrogation room was not "the most commodious of rooms," Soto slept "most soundly and apparently most comfortably for a lengthy period of time," and the detectives "inquired of his needs" and "provided him with water, food and soda." The trial court also found that the break in the interrogation, during which detectives were investigating the case, "appears to have been reasonable and necessary under the totality of [the] circumstances," and that "the fact that [Soto] was admonished not to lie any further about the matter, [and] that a lie would place him in further jeopardy or trouble, certainly was a reasonable interrogation technique." Nor did the trial court consider the comment about "promis[ing] [Soto's] mother to give [him] one

3

more chance" to be a "coercive activity under the totality of [the] circumstances." The trial court further found that certain untruthful statements made by detectives, i.e., that Soto's fingerprints were on the steering wheel of the vehicle and that the shootings were caught on traffic cameras, did not undermine the voluntariness of Soto's statement. The trial court concluded that Soto's "ability to reason, comprehend or resist" was not overcome by the detectives' interrogation techniques, and that Soto's statement was voluntarily given.

*People v. Soto*, 2011 Cal. App. Unpub. LEXIS 2522, *2-7, *30-33 (Cal. Ct. App. Apr. 6, 2011).

## II. Analysis

### A. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *Wilson v. Corcoran*, __ U.S. __, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859

4

(quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, __ U.S. __, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, __ U.S. __, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Su-preme] Court, be accepted as correct." *Id*. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law under § 2254(d)(1) if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412; *accord Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v.*

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

*Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

In evaluating whether the petition satisfies § 2254(d), a federal court looks to the last reasoned state court decision. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, the court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, __ U.S. __, 133 S. Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v.*

*Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

### B. Petitioner's Claim

Petitioner's sole claim is that his incriminating statements to Detective Rodriguez were obtained through coercion. He contends that several factors combined to create an unduly coercive environment: (1) his isolation in a small, windowless room for long periods of time; (2) that officers did not offer him the opportunity to make a telephone call; (3) that "[h]e could not even have the use of the bathroom without the cooperation and consent of the officers"; (4) the sequence of interrogation sessions; (5) the delays between the interrogation sessions; (6) the lies Detective Rodriguez told petitioner. ECF No. 1 at 36-41. The last reasoned state court decision on this issue was provided by the California Court of Appeal on petitioner's direct appeal[3], and thus the court must determine whether that decision was contrary to, or involved an unreasonable application of, clearly established federal law. (Petitioner does not claim that the state court's factual determinations were unreasonable in light of the evidence.)[4]

/////

---

[3] Petitioner sought further review in the state supreme court, which was summarily denied. Docs. Lodged ISO Resp.'s Answer (hereinafter "Lodged Docs.") No. 9.

[4] Petitioner requests counsel. ECF No. 1 at 9-10. There currently exists no absolute right to appointment of counsel in habeas proceedings. *See Nevius v. Sumner*, 105 F.3d 453, 460 (9th Cir. 1996). The court may appoint counsel at any stage of the proceedings "if the interests of justice so require." See 18 U.S.C. § 3006A; *see also*, Rules, 1(b), 8(c), Rules Governing § 2254 Cases. The court does not find that the interests of justice would be served by the appointment of counsel in this action. Accordingly, petitioner's request for appointment of counsel is denied.

i. **Governing Law**

The Fourteenth Amendment's Due Process Clause prohibits state authorities from using an involuntary or coerced confession of a defendant at his trial. *Lego v. Twomey*, 404 U.S. 477, 478 (1972); *Jackson v. Denno*, 378 U.S. 368, 385-86 (1964). A confession may be determined to be involuntary only if it was obtained by "coercive police activity" (i.e., physical or psychological intimidation) such that a suspect's will was overborne. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *Blackburn v. Alabama*, 361 U.S. 199, 206 (1960) (noting that "coercion can be mental as well as physical"). To determine whether coercive activity by authorities rendered a suspect's incriminating statements involuntary, a court must look at the "totality of the circumstances," which includes such factors as: (1) the degree of police coercion; (2) the length, location, and continuity of the interrogation; (3) the suspect's maturity, education, physical condition, and mental health; and (4) whether authorities informed the suspect of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993). Deceptive statements by interrogating officers generally do not, by themselves, render a subsequent confession involuntary. *United States v. Crawford*, 372 F.3d 1048, 1060-61 (9th Cir. 2004); *see also Grazier v. Cupp*, 394 U.S. 731, 737-39 (1969) (holding that the defendant's confession was voluntary even though an officer falsely told the defendant that his co-conspirator had confessed).

ii. **The State Adjudication of Petitioner's Claim Was Not Contrary To, Nor an Unreasonable Application of, Federal Law**

On the facts presented here, the court cannot conclude that the state court's rejection of petitioner's claim was contrary to, or unreasonably applied, clearly established U.S. Supreme Court precedents. Petitioner was advised of his *Miranda* rights and subsequently elected to speak to Detective Rodriguez. Detective Rodriguez did not make petitioner any promises nor threaten him with violence. It was a reasonable application of controlling precedent for the state court to conclude that Detective Rodriguez's lies and statements that petitioner was going to "screw" himself if he lied did not amount to unconstitutional coercion. *See Pollard v. Galaza*, 290 F.3d 1030, 1034 (9th Cir. 2002) ("[M]isrepresentations made by law enforcement in obtaining a statement, while reprehensible, does not [sic] necessarily constitute coercive conduct."); *Amaya-*

8

*Ruiz v. Stewart*, 121 F.3d 486, 494-95 (9th Cir. 1998) (holding that officers' conduct in encouraging a suspect to tell the truth and misrepresenting that incriminating evidence had been obtained did not amount to coercion); *United States v. Haswood*, 350 F.3d 1024, 1029 (9th Cir. 2003) ("Reciting potential penalties or sentences does not constitute coercion."). Petitioner was provided breaks, food, drinks, and an opportunity to sleep. While petitioner argues that his interrogation (which lasted about 15 hours in total, with about four hours of actual questioning) was unduly long, the circumstances here simply are not on par with those present in U.S. Supreme Court cases that have invalidated confessions. *See. e.g., Darwin v. Connecticut*, 391 U.S. 346, 349 (1968) (forty-eight hour interrogation of a defendant who had been denied his right to counsel); *Beecher v. Alabama*, 389 U.S. 35, 38 (1967) (interrogation of a wounded defendant at gunpoint over five days); *Clewis v. Texas*, 386 U.S. 707, 709-10 (1967) (nine-day interrogation with inadequate food and sleep); *Davis v. North Carolina*, 384 U.S. 737, 746-47 (1966) (questioning over sixteen-day period with inadequate food); *Haynes v. Washington*, 373 U.S. 503, 519 (1963) (suspect held for five days and never advised of his rights); *Reck v. Pate*, 367 U.S. 433, 443-44 (1961) (suspect held for four days and subjected to physical abuse); *see also Taylor v. Maddox*, 366 F.3d 992, 1015-16 (9th Cir. 2004) (finding coercion where a 16-year-old suspect was interrogated for three hours in the middle of the night with no break, no food or water, and no contact with his parents and was physically abused). It cannot be said that "the state court's ruling on [petitioner's claim] was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87. Rather, the state court reasonably applied the applicable precedents, and petitioner's habeas claim must therefore be denied.

### III. Recommendation

For the reasons stated above, it is hereby RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written

9

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: May 4, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE